UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LOUIS C.,

                      Plaintiff,                        **DECISION AND ORDER**
         v.
                                              1:23-CV-00079 EAW
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Louis C. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, Plaintiff's motion (Dkt. 6) is granted to the extent that the matter is remanded for further administrative proceedings and the Commissioner's motion (Dkt. 8) is denied.

## BACKGROUND

Plaintiff protectively filed his application for SSI on July 7, 2020. (Dkt. 5 at 19, 207-212).[1]  In his application, Plaintiff alleged disability beginning July 7, 2020. (*Id.* at 207).  Plaintiff's application was initially denied on February 12, 2021. (*Id.* at 91-105).  At Plaintiff's request, a telephonic hearing was held before administrative law judge ("ALJ") Mark Solomon on December 21, 2021. (*Id.* at 33-56).  On January 13, 2022, the ALJ issued an unfavorable decision. (*Id.* at 19-27).  Plaintiff requested Appeals Council review; his request was denied on November 22, 2022, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *see id*. § 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since July 7, 2020, the application date.  (Dkt. 5 at 21).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of history of right leg deep vein thrombosis and history of pulmonary embolism.  (*Id.*).  The

ALJ further found that Plaintiff's medically determinable impairments of diabetes mellitus, hypertension, and a learning disability were non-severe. (*Id*.).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 24). The ALJ particularly considered the criteria of Listings 1.00 and 7.08 in reaching this conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c). (*Id.*). At step four, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that Plaintiff was capable of performing his past relevant work as a transportation company-van driver. (*Id.* at 26). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 27).

## II.    Remand for Further Administrative Proceedings is Required

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that: (1) the ALJ failed to properly evaluate Plaintiff's cognitive impairments; and (2) the ALJ erred in assessing medical opinion evidence from Edward

O'Brien, M.D.  (Dkt. 6-1 at 10-19).  For the reasons set forth below, the Court finds that remand for further proceedings is required.

A.    **Evaluation of Plaintiff's Cognitive Impairments**

Plaintiff challenges the ALJ's analysis of Plaintiff's cognitive limitations at step two of the analysis and beyond.

At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c); *Eralte v. Colvin*, No. 14 Civ. 1745(JCF), 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014) ("An impairment is 'severe' if it 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" (quoting 20 C.F.R. § 404.1520(c))).  The Commissioner's Regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b).

"When the parties disagree over the effect of the ALJ's failure to include a condition at step two, resolution of this issue comes down to a question of whether there was substantial evidence to support the ALJ's conclusion that [the omitted condition] should not be included as a severe impairment."  *Eralte*, 2014 WL 7330441, at *10 (quotations

omitted) (alteration in original).  "[T]he severity prong is intended as a *de minimis* standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work activity.'" *Vicari v. Astrue*, No. 1:05-cv-4967-ENV-VVP, 2009 WL 331242, at *3 (E.D.N.Y. Feb. 10, 2009) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)); *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) ("[T]to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018))).  However, despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012).

At step two, the ALJ addressed Plaintiff's learning disability and why he did not find it to be a severe impairment.  The ALJ considered consultative intelligence evaluation and psychiatric evaluations competed by Susan Santarpia, Ph.D. (Dkt 5 at 296-99, 300-303).  In the intelligence evaluation, Dr. Santarpia indicated that Plaintiff was unsure of what grade he was in when he left school and noted his receipt of special education services.  (*Id.* at 296).  Dr. Santarpia indicated that the administration of a standard intelligence measure, the Wechsler Adult Intelligence Scale ("WAIS-IV") yielded results showing a Full Scale IQ falling within the borderline range of ability.  (*Id.* at 297).  Dr. Santarpia warned that "[g]iven that 3 of the 4 indices that make up the Full Scale IQ fall

higher than the Full Scale IT, this score should be considered with caution." (*Id.* at 297-98). The report reflects that an Index Analysis revealed that "Verbal Comprehension, Perceptual Reasoning, and Working Memory all fall within the low-average range of ability," and "Processing Speed falls within the borderline range of ability." (*Id.* at 298). She concluded that "[Plaintiff] presents as able to understand remember, and apply simple as well as complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, co-workers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; regulate emotion, control behavior, and maintain well-being; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions within normal limits." (*Id.* at 298). The ALJ explained that he found Dr. Santarpia's opinion to lack probative value on the issue of disability because "it was issued prior to the protective filing date." (*Id.* at 22).

The ALJ also addressed the opinion of state agency medical experts D. Brown, Psy.D., and A. Chapman, Psy.D. (*Id.* at 22). On February 12, 2021, Dr. Brown opined that Plaintiff's learning disorder was a severe impairment. (*Id.* at 65). He indicated that Plaintiff had moderate limitations in understanding, remembering, or applying information; mild limitations in concentration, persistence, and pace, and adapting or managing oneself; and no limitations in interacting with others. (*Id.*). Dr. Brown opined that Plaintiff is markedly limited in carrying out detailed instructions and "may have some issues from time to time with complex or highly academic pursuits but appears entirely capable of sustained simple tasks." (*Id.* at 65, 68). Dr. Brown also noted that there was

insufficient evidence to evaluate Plaintiff's claim.  (*Id.* at 66).  On reconsideration, dated March 10, 2021, Dr. Chapman indicated that Plaintiff's learning disorder was a severe impairment and concurred with Dr. Brown as to Plaintiff's limitations therefrom.  (*Id.* at 80-81).  The ALJ found the opinions of Dr. Brown and Dr. Chapman to be not persuasive, on grounds that "there is no evidence of any mental health limitations after the alleged onset date," and the "record documents no treatment for mental conditions, there is no evidence of limitations at examinations by primary care provider or any other source." (*Id.* at 22).

The ALJ also assessed the four broad functional areas and concluded that Plaintiff has a mild limitation in understanding, remembering, and applying information, and no limitation in interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.  (*Id.* at 22-23).  He concluded that because Plaintiff's learning disorder causes no more than mild limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in Plaintiff's ability to do basic work activities, that the impairment was non-severe.  (*Id.* at 23).

Plaintiff also points to other evidence in the record—in attention to the medical opinion evidence outlined above—which he argues demonstrates that his learning disorder is a severe impairment.  For example, Plaintiff's primary care physician, Edward O'Brien, M.D., completed an employability assessment on March 27, 2021, which indicates that Plaintiff has the medical conditions of autism and mild mental retardation.  (*Id.* at 436).  Dr. O'Brien opined that Plaintiff is very limited in understanding and remembering

instructions, carrying out instructions, maintaining attention and concentration, and making simple decisions, and moderately limited in interacting appropriately with others, maintaining socially appropriate behavior, maintaining basic standards of personal hygiene, and appearing able to function in a work setting at a consistent pace. (*Id.* at 437). The ALJ rejected this opinion as unpersuasive, indicating that it lacked documented supporting evidence, and noting that Dr. O'Brien did not conduct any mental status examinations to support his conclusions of mental limitations. (*Id.* at 26). The ALJ also noted Plaintiff's normal neurological and psychiatric findings. (*Id.*).

Of course, the fact that there is contradictory evidence in the record relating to a specific impairment does not render the ALJ's determination erroneous. Rather, in deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

But here, in finding Plaintiff's learning disorder to be non-severe, the ALJ rejected the only four medical opinions in the record that addressed this impairment and did not make clear the basis for his determination to the contrary. *Bogner v. Comm'r of Soc. Sec.*, No. 20CIV10724NSRJCM, 2022 WL 16701197, at *14 (S.D.N.Y. July 18, 2022) ("The ALJ has no authority to opine on the extent of the abnormalities without competent medical evidence. Here, the ALJ did just that when she rejected Dr. Kahane-Pierre's and Dr. Ellis's opinions on the ground that they are inconsistent with 'the relatively minor abnormalities,'

but cited to no medical evidence in the record to support her opinion.  As a result, the ALJ improperly substituted her own opinion for that of Dr. Kahane-Pierre and Dr. Ellis, which is an error of law."), *adopted*, No. 20CIV10724NSRJCM, 2022 WL 4752464 (S.D.N.Y. Sept. 30, 2022).

Moreover, simply because the ALJ concluded that Plaintiff's learning disorder was a non-severe impairment did not relieve him of the duty to consider it in connection with assessing the RFC.  Rather, an RFC determination "must account for limitations imposed by both severe and nonsevere impairments." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012); *see also Bogner*, 2022 WL 16701197, at *16 ("Assuming, *arguendo*, that Plaintiff's mental impairments were properly found to be non-severe, the ALJ erred in failing to include any mental limitations in the RFC.  'Even where substantial evidence supports the ALJ's finding that a claimant's mental impairment was nonsevere, it would still be necessary to remand . . . for further consideration where the ALJ failed to account for the claimant's mental limitations when determining her RFC.'" (quoting *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 740-41 (S.D.N.Y. 2018)); *David Q. v. Comm'r of Soc. Sec*., No. 20-CV-1207MWP, 2022 WL 806628, at *6 (W.D.N.Y. Mar. 17, 2022) (remanding for further proceedings where ALJ found that the plaintiff's depression was a non-severe impairment causing "mild" limitations in each of the four broad categories of functioning, but failed to properly consider or account for those limitations in the RFC).

Here, the ALJ assessed Plaintiff's learning disability as non-severe and found that Plaintiff had no work-related mental functional limitations.  In making these findings, as noted, the ALJ cited to a lack of treatment for mental health conditions, evidence of

limitations at examinations by any medical source, and Plaintiff's activities of daily living, while acknowledging the full-scale IQ score within the borderline range of ability and the two state agency medical expert conclusions that Plaintiff's learning disorder was a severe impairment causing Plaintiff to have moderate limitations in the ability to understand and remember detailed instructions.  Notwithstanding the identified evidence, the ALJ then assessed, without the benefit of opinion evidence from an acceptable medical source or any explanation, an RFC containing no mental limitations to address these known deficits in mental functioning.  In light of other evidence in the record supporting that Plaintiff does experience some cognitive deficits, this was error.

In reaching this conclusion, the Court emphasizes two points.  First, the record as it pertains to Plaintiff's learning impairments is not well-developed.  "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011).  "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).  Instead of relying on apparent void in the record to make his own determination that Plaintiff's learning deficits would not cause work-related functional limitations, the ALJ should have, at a minimum, secured a consulting physician to examine Plaintiff and

to render an opinion as to his cognitive functional limitations. *See Munerlyn v. Colvin*, 203 F. Supp. 3d 253, 264 (W.D.N.Y. 2016) ("Here, a consultative examination was necessary for ALJ Weir to reach a decision with respect to Plaintiff's limitations in connection with his alleged learning disability.  ALJ Weir based his findings that Plaintiff had the RFC to 'understand, remember, and carry out simple rote tasks' on his interpretation of the jobs held by Plaintiff post-graduation.  However, there are no medical opinions in the record concerning Plaintiff's intellectual capacity, despite the fact that this is the disability Plaintiff alleged in his application for benefits."); *Wallace v. Colvin*, 120 F. Supp. 3d 300, 305 (W.D.N.Y. 2015) ("The Court is mindful that in general, passing references in the record to a claimant's low intelligence do not trigger an ALJ's obligation to order intelligence testing, particularly where other evidence of record, such as the claimant's education, work history, and activities of daily living, does not suggest a severe cognitive impairment," but is appropriate where the record reflects educational difficulties or other evidence of limited intellectual capacity); *Falcon v. Apfel*, 88 F. Supp. 2d 87, 91 (W.D.N.Y. 2000) ("It is considered reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." (quotation omitted)).

The second point is that the Court is cognizant that where the record reflects only minor impairments, the ALJ may, in his discretion, assess an RFC in the absence of opinion evidence.  *See Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) ([U]under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common

sense judgment about functional capacity even without a physician's assessment. . . ." (internal quotations and citation omitted)).  However, "the leeway given to ALJs to make 'common sense judgments' does not typically extend to the determination of mental limitations, which are by their very nature 'highly complex and individualized.'"  *Lilley v. Berryhill,* 307 F. Supp. 3d 157, 161 (W.D.N.Y. 2018) (quoting *Nasci v. Colvin,* No. 6:15-CV-0947 (GTS), 2017 WL 902135 at *9 (N.D.N.Y. Mar. 7, 2017)); *see also Deshotel v. Berryhill,* 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018) (ALJ's ability to make common sense judgments does not extend to assessment of mental limitations).  Here, at a minimum, the ALJ found that Plaintiff had a mild limitation in understanding, remembering, and applying information and did not address why he did not account for that limitation in determining Plaintiff capable of performing the full range of medium work.  *Grace M. v. Comm'r of Soc. Sec.*, No. 20-CV-1023SR, 2022 WL 912946, at *3 (W.D.N.Y. Mar. 29, 2022) ("An ALJ's failure to evaluate the extent to which mild limitations may or may not impact a plaintiff's ability to engage in substantial gainful employment constitutes legal error requiring remand."); *Jatava L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0772-MJR, 2021 WL 4452265, at *5 (W.D.N.Y. Sept. 28, 2021) ("[E]ven if the record did support a step-two finding that plaintiff's mental impairments were non-severe, the ALJ was still obligated to consider those impairments in formulating the RFC.  Regulations and case law are clear that an RFC determination must account for limitations imposed by both [severe] and non-severe impairments.  Such an accounting did not occur here.  Indeed, despite giving significant weight to Dr. Dolan's finding that plaintiff had mild mental health limitations in two areas of functioning, the ALJ did not include any mental limitations in

the RFC nor did he explain the absence of such limitations.  At a minimum, the ALJ's reasoning as to why he did not include any mental limitations in the RFC should have been stated in his decision." (citation omitted)); *Theresa W. v. Comm'r of Soc. Sec.*, No. 19-CV-6541-FPG, 2021 WL 1206519, at *2 (W.D.N.Y. Mar. 31, 2021) ("If an ALJ finds that nonsevere impairments result in 'mild' restrictions, the ALJ must analyze those restrictions in determining the claimant's RFC.  If the ALJ fails to address nonsevere mental impairments in formulating a claimant's RFC, it is necessary to remand [the] case for further consideration." (internal citations and quotations omitted)); *see also Sandra J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00272 EAW, 2023 WL 3734289, at *5 (W.D.N.Y. May 31, 2023 ("The ALJ's analysis of the Paragraph B criteria at step two is no substitute for his express consideration of limitations arising from Plaintiff's mental impairments in connection with the RFC determination.").  This, coupled with the lack of medical opinion evidence relied upon to support the determination, leaves the Court unable to follow the logic of the ALJ's determination.   Accordingly, the matter is remanded for further proceedings so that the ALJ may properly assess Plaintiff's mental limitations relating to his learning disorder.

### B.    <u>**Remaining Argument**</u>

As set forth above, Plaintiff has identified an additional reason why he contends the ALJ's decision was erroneous.  However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue.  *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining

to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 6) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.


ELIZABETH A. WOLFORD
Chief Judge
United States District Court


Dated: February 27, 2024
        Rochester, New York

- 16 -